Robert W. Clarida
Benjamin Sahl
COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue Of The Americas
New York, NY  10036-6799
(212) 790-9200

Attorneys for Defendant GREGORY MURPHY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

EFFIE FILM LLC,                              :

              Plaintiff,           :       11-CV-0783 (TPG)

      -against-                         :       **MEMORANDUM OF LAW IN**
                                             **SUPPORT OF DEFENDANT'S**
GREGORY MURPHY,                   :       **MOTION TO DISMISS**

          Defendant.             :

                                             :

--------------------------------------------------------------

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ................................................................................................................. 1

ARGUMENT ......................................................................................................... 4

    1.    The Complaint Does Not Allege, Nor Do the Facts Constitute, A
        Justiciable Case or Controversy ............................................................. 4

        A.    The Parties' Dispute Is Not Sufficiently Immediate ................... 7

        B.    The Parties' Dispute Is Not Sufficiently Concrete .................... 11

        C.    Plaintiff's Alleged Harm Is Not Sufficient to Create Jurisdiction ............ 13

        D.    Plaintiff Has No Reasonable Apprehension of Litigation ......................... 14

    2.    The Court Should  Decline To Grant the Requested Relief ................... 15

CONCLUSION ...................................................................................................... 17

29249/000/1225091.3

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*AARP v. 200 Kelsey Assocs., LLC*, 06 Civ. 81, 2009 U.S. Dist. LEXIS 969, 2009 WL
47499, (S.D.N.Y. Jan. 8, 2009) ..................................................................................5

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .................................................................................................6

*Bank of Credit and Commerce International v. Pharoan*,
43 F. Supp. 2d 359 (S.D.N.Y. 1999) ...........................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, (2007) ...........................................................6, 7, 13

*Bruce Winston Gem Corp. v. Harry Winston, Inc.*,
09 Civ. 7352 (JGK), 2010 U.S. Dist. LEXIS 96974 (S.D.N.Y. Sept. 16, 2010).............5, 15

*Cardinal Chem. Co. v. Morton Int'l, Inc.*
508 U.S. 83 (1993) .......................................................................................................5

*Crane v. Poetic Products, Ltd.*,
593 F. Supp. 2d 585 (S.D.N.Y. 2009) .......................................................................16

*In re Combustion Equip. Assocs., Inc.*,
838 F.2d 35 (2d Cir. 1988) ........................................................................................13

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007) .....................................................................................6, 7

*Jenkins v. U.S.*,
386 F.3d 415 (2d Cir. 2004) ......................................................................................11

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, (2007) .....................4, 5, 14

*Patnaik v. New York Renal Assoc.*,
2008 WL 5429869 (S.D.N.Y. Dec. 30, 2008) ............................................................7

*Re-Alco Inds., Inc. v. Nat'l Ctr. for Health Educ., Inc.*,
812 F. Supp. 387 (S.D.N.Y. 1993) ..........................................................................7, 8

*S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch., Inc.*,
24 F.3d 427 (2d Cir. 1994) ........................................................................................13

ii

*SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, (Fed. Cir. 2007) ................................4

*Shloss v. Sweeney*,
    515 F. Supp. 2d 1068 (N.D. Cal. 2007)....................................................................10, 12, 16

*Sobini Films v. Tri-Star Pictures, Inc.*,
    61 U.S.P.Q.2d 1930 (C. D. Cal. 2001) ..........................................................................passim

*Starter Corp. v. Converse, Inc.*,
    84 F.3d 592 (2d Cir. 1996) (per curiam) ..................................................................................8

*Taggart v. Moody's Inv. Srv., Inc.*,
    2007 WL 2076980 (S.D.N.Y. July 17, 2007)......................................................................6, 7

*Thos. G. Lang v. Pacific Marine & Supply Co.*,
    895 F.2d 761 (Fed. Cir. 1990) ..................................................................................................9

*Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87 (2d Cir. 1963)............................................8

*Wilton v. Seven Falls Co.*,
    *515* U.S. 277-288 (1995) ........................................................................................................5

## STATUTES

28 U.S.C. § 2201(a) ......................................................................................................................4

29249/000/1225091.3

## PRELIMINARY STATEMENT

Declaratory Defendant Gregory Murphy respectfully moves to dismiss the Complaint in this action with prejudice pursuant to Rule 12(b)(6) and 12(b)(1), Fed. R. Civ. Pro., and for other and further relief.  This declaratory judgment action fails to present a justiciable controversy because the parties' alleged dispute lacks sufficient immediacy and concreteness.  Moreover, plaintiff's alleged harm is not sufficient to give rise to jurisdiction, plaintiff can have no reasonable apprehension of litigation in connection with the works as to which it seeks a declaration, and even if a justiciable controversy exists, which Defendant denies, the Court should decline to award a declaration because it will not be conclusive of the parties' alleged dispute.

## FACTS

The relevant facts are more fully set forth in the accompanying affidavit of Gregory Murphy ("Murphy Aff.").  Briefly, Mr. Murphy is the author of a successful Off-Broadway theatrical production entitled *The Countess*.  Murphy Aff. ¶¶ 2; 6-8.  *The Countess*, the product of more than fifteen years of painstaking historical research by Mr. Murphy, offers a vividly dramatic telling of the Victorian scandal involving the preeminent art critic John Ruskin, his wife Effie, and the Pre-Raphaelite painter John Everett Millais.  *Id.* ¶¶ 2-3.  *The Countess* ran Off-Broadway for 634 performances in New York at the Samuel Beckett Theatre and the Lambs Theatre and was produced in London's West End at the Criterion theatre.  *Id.* ¶¶ 6-7.  THE NEW YORK TIMES described *The Countess* as "serious," "wonderfully witty" and "erotically charged."  *Id.* ¶ 6.  *The Countess* is published by the Dramatists Play Service, Inc.  *Id.* ¶ 8.  Mr. Murphy is also the author of a screenplay of the same title.  *Id.* ¶ 9.

1

Emma Thompson and her husband, Greg Wise, have been represented to be the authors of a screenplay entitled *Effie*. *Complaint* ¶ 1; Murphy Aff. ¶¶ 14, 18, 26. Both Ms. Thompson and Mr. Wise had access to versions of *The Countess*: Mr. Wise to the playscript, *id.* ¶ 11, and Ms. Thompson to the screenplay. *Id.* ¶ 12.

In April of 2009, Mr. Murphy learned of the existence of *Effie* and the plans to produce a movie based upon it. *Id.* ¶ 13. As Mr. Murphy learned, Mr. Wise was to play role of "John Ruskin," *id.* ¶ 15, a role he had been offered in the London production of *The Countess*, and considered but ultimately did not accept, *id.* ¶ 11, and Ms. Thompson was to play the role of "Lady Elizabeth Eastlake," *id.* ¶ 16, the role Mr. Murphy had greatly expanded in the screenplay before arranging for Ms. Thompson to receive a copy. *Id.* ¶ 12.

Discussions ensued between Mr. Murphy's producer, Ludovica Villar-Hauser, and producers representing the *Effie* camp, including an exchange of screenplays. *Id.* ¶¶ 17, 18. Months of intermittent communication by e-mail ultimately led in late 2009 to meetings in New York between Mr. Murphy and a producer representing the *Effie* camp, *id.* ¶ 20, and in London at the home of Ms. Thompson between Mr. Murphy and Ms. Thompson. *Id.* ¶ 21. The possibility of collaboration, discussed by Mr. Murphy and Ms. Thompson, was quickly disavowed by her camp, *id.* ¶¶ 21-22, the tone of communications soured, *id.* ¶¶ 22-23, and by the Spring of 2010, negotiations had been delegated to transactional attorneys for the two camps. *Id.* ¶ 25.

These negotiations continued through the summer of 2010, until, in October of 2010, it appeared agreement might be within reach. *Id.* ¶ 26. The principal terms were: payment by the producers of *Effie* to Mr. Murphy of £100,000 for the exclusive rights in and to the *Countess* screenplay; "back-end" compensation to Mr. Murphy equal to that to which Ms. Thompson was

to be entitled (most favored nations 3% of net); credit for the screenplay to be "Screenplay by Emma Thompson, Greg Wise and Gregory Murphy"; the credit "Gregory Murphy's play, *The Countess* was directed and produced in New York by Ludovica Villar-Hauser on behalf of the Villar-Hauser Theater Co., Inc. in 1995" to appear in the closing credits at the end of the film; and Mr. Murphy's rights in the screenplay to revert to him if no film were to be produced within three years. *Id.* The remaining material open term was the schedule of payments, *id.*, an issue on which the parties were ultimately unable to reach agreement. *Id.* ¶ 27.

In late November 2010, Mr. Murphy's transactional counsel was contacted by a litigator, who wrote that he now represented the *Effie* camp, which, he represented, now disavowed any prior offers, that he had reviewed a draft of *Effie*, dated January 2010, against the playscript of *The Countess*—the screenplay of *The Countess* was not used in his comparison—and that in his view there was no substantial similarity between the works. *Id.* ¶ 28.

In early December, 2010, Mr. Murphy's transactional counsel responded to the litigator's letter, pointing out, among other things, that any comparison for purposes of examining substantial similarity, to be meaningful would have to be between the operative draft of *Effie* (evidently one dating from January of 2010, which Mr. Murphy's camp has never seen) and the *Countess* Screenplay. *Id.* ¶ 29. The litigator did not respond. Instead, unexpectedly and without warning, on Feb. 7, 2011, Mr. Murphy was served with papers commencing the instant action, seeking a declaratory judgment regarding an *Effie* script completed in 2010 which neither Mr. Murphy nor his counsel have ever seen.

**ARGUMENT**

1.    The Complaint Does Not Allege, Nor Do the Facts Constitute,  A Justiciable Case or Controversy

The Declaratory Judgment Act ("DJA") provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). The DJA thus explicitly requires that there be an "actual controversy." In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007), the Supreme Court explained that the "question in each case," to determine whether there is an "actual controversy" pursuant to the DJA, "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient *immediacy* and *reality* to warrant the issuance of a declaratory judgment." *Id.* at 127 (emphasis added, internal quotation marks and citation omitted). The Court noted that the dispute must be "definite and concrete, touching the legal relations of the  parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (internal citation, quotation marks and alterations omitted).

In *MedImmune*, the parties had entered into a patent licensing agreement. The petitioner claimed that it was not required to make the licensing payments because the patent was invalid, but it continued to make the payments, under protest, to avoid a threat to have its sales enjoined if it did not continue to make the royalty payments. The Supreme Court found that an actual controversy existed and rejected a requirement that the declaratory judgment plaintiff have a "reasonable apprehension of imminent suit." *Id.* at 132 n.11; see *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion

4

in MedImmune represents a rejection of our reasonable apprehension of suit test."); *AARP v. 200 Kelsey Assocs., LLC*, 06 Civ. 81, 2009 U.S. Dist. LEXIS 969, 2009 WL 47499, at *6-7 (S.D.N.Y. Jan. 8, 2009) (discussing the Supreme Court's rejection of the reasonable apprehension of suit test in *MedImmune*).

As this court explained in *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, 09 Civ. 7352 (JGK), 2010 U.S. Dist. LEXIS 96974 (S.D.N.Y. Sept. 16, 2010) "[p]rior to *MedImmune*, the Court of Appeals for the Second Circuit made it clear that to obtain a declaratory judgment . . . plaintiff, the potential infringer, must have engaged in a course of conduct evidencing a 'definite intent and apparent ability to commence use of the marks on the product,' " citing *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595-596 (2d Cir. 1996) (per curiam). This test survives even after *MedImmune* "because it is anchored in the requirement of the *specificity* and *immediacy* of the dispute which the Court reaffirmed in MedImmune." *Bruce Winston* at *11-12 (emphasis added).

The party seeking a declaratory judgment bears the burden of establishing the existence of an actual controversy. *Cardinal Chem. Co. v. Morton Int'l, Inc.* 508 U.S. 83, 96 (1993) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937)). And even if the declaratory judgment plaintiff meets that burden, courts have discretion to decline to exercise jurisdiction. *Wilton v. Seven Falls Co., 515* U.S. 277, 288 (1995).

Here, plaintiff Effie Film has not met its burden of establishing an immediate, concrete case or controversy.

The unsupported and nebulous allegations in the Complaint are nothing but conjecture and speculation and do not establish that there is any "actual controversy" between the parties with respect to the actual works as to which plaintiff seeks relief, *i.e.,* (1) the *Effie* screenplay

5

completed and submitted to the Copyright Office in 2010 and (2) a hypothetical film "based on" that script that plaintiff hopes to make someday. The dispute here is neither immediate nor concrete enough to constitute a justiciable controversy.

Moreover, plaintiff's allegations concerning the parties' alleged dispute lack sufficient factual content to rise above the level of mere formulaic recitations of the elements of a cause of action that are insufficient under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)("*Twombly*"). The Second Circuit has held that the *Twombly* heightened pleading standard  obligates a Plaintiff "to amplify a claim with some *factual* allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted,* 128 S. Ct. 2931 (2008); *reversed and remanded on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Accordingly, a valid complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65. Moreover, the Plaintiff's *allegations of fact* "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct., at 1965. If the allegations do not "nudge [Plaintiff's] claims across the line from conceivable to plausible, its complaint must be dismissed." *Taggart v. Moody's Inv. Srv., Inc.,* 2007 WL 2076980, at *1 (S.D.N.Y. July 17, 2007).

Further, despite the court's obligation to assume the truth of Plaintiff's factual allegations for purposes of a 12(b)(6) dismissal motion, "legal conclusions, deductions, or opinions couched as factual allegations are not given [this] presumption of truthfulness." *Taggart,* 2007 WL 2076980, at *1 (quoting *Black v. Town of Harrison*, 2002 WL 31002824, at *3 (S.D.N.Y. Sept. 5, 2002)); *see also Gottlieb Dev.,*  590 F. Supp.2d 625 at 631 ("Bald contentions, unsupported

6

characterizations and legal conclusions are not well-pled allegations and will not defeat [a

12(b)(6)] motion") (citations omitted).

Under this standard the conclusory allegations in the instant complaint fall woefully short

of properly alleging an immediate and concrete justiciable dispute between plaintiff and

defendant.  To avoid dismissal of this claim and render it "plausible," in light of the

uncontrovertable fact that defendant *has never communicated in any way* with plaintiff regarding

the present *Effie*  script, plaintiff was required "to amplify [its] claim with *some* factual

allegations" in order to properly allege that there is a genuine case or controversy.  *Iqbal*, 490

F.3d at 157-58.  Plaintiff utterly failed do so.  Thus, plaintiff's conclusory assertions that a

justiciable controversy exists are "speculative" and merely "conceivable," not *plausible.*

*Taggart*, 2007 WL 2076980, at *1.

*Twombly* and *Iqbal* aside, Plaintiff's mere "labels" and "legal conclusions" as to the

immediacy and concreteness of the dispute are not even entitled to the presumption of truth

*factual* assertions enjoy under Rule 12(b)(6) motions. *Patnaik v. New York Renal Assoc.,* 2008

WL 5429869, at *1 (S.D.N.Y. Dec. 30, 2008) (Cote, J.) ("[C]onclusory allegations or legal

conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss")

(quoting *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006)); *Bank*

*of Credit and Commerce International v. Pharoan*, 43 F. Supp. 2d 359 (S.D.N.Y. 1999).

### A.    The Parties' Dispute Is Not Sufficiently Immediate

In order to determine whether a dispute is sufficiently immediate to warrant declaratory

relief, the court must inquire whether "plaintiff would *immediately* begin production" but for the

dispute at issue,  *Re-Alco Inds., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 395

(S.D.N.Y. 1993)(emphasis added), citing *International Harvester Co. v. Deere & Co.*, 623 F.2d

1207 (7th Cir. 1980) ("the plaintiff must have actually produced the accused article or have

7

engaged in preparations for production such that [plaintiff could begin production immediately]"
Id. at 1210); *Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 90 (2d Cir. 1963)(holding that
"where there is no actual manufacture, use, or sale, and no *immediate intention and ability* to
practice the invention, there is no justiciable controversy")(emphasis added).

Plaintiff has no such immediate ability to produce the hypothetical film as to which it
seeks a declaration. The hypothetical film, which is the central focus of the relief plaintiff seeks,
does not exist, and plaintiff has not even yet secured financing or started pre-production, much
less begun production.  The courts have squarely rejected claims for declaratory relief when the
actual production of a film remains such a distant and uncertain possibility.  In *Sobini Films v.
Tri-Star Pictures, Inc.*, 61 U.S.P.Q.2d 1930 (C. D. Cal. 2001), the court held that plaintiff's
proposed Zorro film was not sufficiently close to commencing production to warrant a
declaration that it would not infringe any trademark rights in the Zorro character held by the
defendant film studio. Despite having invested some $120,000 in the project, the declaratory
plaintiff simply was not at the "last point before the point of no return" in the production process.
*Id.* at 1933 n.4, citing *Arrowhead Indust. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir.
1988) and *Starter Corp. v. Converse*, 84 F.3d 592, 596 (2d Cir. 1996).  Instead, the plaintiff's
request for a declaration was "in essence telling the court: 'we would like to use the mark, but
before we do, we want a court to say we may do so safely'." *Sobini* at 1934, quoting
*Windsurfing Int'l Inc. v. AMF, Inc.*, 828 F.2d 755, 758 (Fed. Cir. 1987). Accordingly, it is not
enough for the plaintiff to be "merely developing a potentially infringing work," *Sobini* at 1935
n. 5, citing *State of Texas v. West Pub. Co.,*, 882 F.2d 171, 175 (5th Cir. 1989).   That is precisely
the situation here.   Plaintiff is merely developing a potentially infringing work, and merely
wants a court to say it may do so safely.

*Sobini* continued, "[i]n other words, to establish a 'case or controversy' in a declaratory relief action, 'the plaintiff must have actually produced the accused article or have engaged in preparations for production such that 'but for a finding that the product infringes or for extraordinary and unforeseen contingencies, the plaintiff would and could begin production *immediately*.'" (quoting *International Harvester*, 623 F.2d at 1210) (emphasis added). Specifically in the context of the film industry, the *Sobini* court noted at 1936 that the potentially infringing film "would not be finished for many months" (citing *Thos. G. Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990) (no actual controversy where potentially infringing item would not be completed for at least nine (9) months after filing of DJ complaint)), and *"it is common knowledge in the motion picture industry that most proposed film projects are never actually produced and only half of the screenplays of even established motion picture writers* are actually produced. *Sobini* at 1936 n.7 (citing W. Goldman, Adventures in the Screen Trade: A Personal View of Hollywood and Screenwriting at 217 (Warner Books 1983))(emphasis added).[1]  Here, plaintiff could not begin principal photography until at least August 2011 under even its most optimistic assumptions, and could not even hope to have a finished film ready for exhibition until many months after that, certainly far beyond the nine-month period rejected as too remote by the Federal Circuit in *Thos. G. Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990).

Indeed, plaintiff does not even allege that it is immediately *ready* to begin production on its hypothetical film.  To the contrary, plaintiff concedes at ¶ 40 of the Complaint that it has not even secured financing to begin the hypothetical film.  Plaintiff does not allege, even upon

---

[1] See also *Dow Jones & Co., Inc. v. Harrods, Ltd.* 237 F. Supp. 2d 394,408 (S.D.N.Y. 2002) (no justiciable controversy where threatened libel claim by declaratory defendant is "grounded on a string of apprehensions and conjectures about future possibilities").

9

information and belief, that such financing will in fact be forthcoming immediately -- or ever -- once this dispute is resolved. Plaintiff does not allege that the hypothetical film will in fact be completed immediately -- or ever -- once financing is secured.  Plaintiff does not allege, even upon information and belief, that the hypothetical film will be marketed, exhibited or distributed immediately -- or ever -- once it is completed.

Plaintiff makes no such allegations because it cannot honestly do so. The securing of financing; the completion of pre-production, production, post-production, marketing and distribution of the hypothetical film all take many months at best and depend solely or largely on circumstances and third parties plaintiff simply does not control.  See *Sobini* FN 7, supra (noting that many films never get made).  This is not a case like *Shloss v. Sweeney*, 515 F. Supp. 2d 1068, 1078  (N.D. Cal. 2007), where plaintiff has "completed all preparatory work" (citing *Cardtoons L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 966 (10th Cir. 1996)) and merely seeks a declaration that it may push a button and transmit material on its website.  While plaintiff may sincerely hope to bring the hypothetical film to completion within the not-too-distant future, meaning perhaps mid-2012, it has no unilateral *ability* to do so.  Its claim for declaratory relief is therefore not ripe.

Because the process of film production is so inherently unpredictable, uncontrollable and protracted, a controversy as to the originality of a script for a hypothetical film is singularly unsuited to declaratory judgment.   Our research reveals no case in the history of American jurisprudence in which a film producer has succeeded in obtaining the relief plaintiff seeks here.  To the contrary, the one case we have identified on analogous facts, *Sobini v. Tri-Star*, discussed above, firmly rejects plaintiff's attempt to obtain a declaratory "green light" for a film project.  Even by the litigious and sharp-elbowed standards of the movie business, Effie Film LLC is

10

breaking unfortunate and unprecedented new ground with this ill-considered, premature
declaratory judgment action.

> B.      The Parties' Dispute Is Not Sufficiently Concrete

Even if the completion date of plaintiff's hypothetical film were more immediate and
less speculative, jurisdiction would still be lacking because the dispute is not sufficiently "fixed
and final." *Jenkins v. U.S.*, 386 F.3d 415, 418 (2d Cir. 2004), citing *Pub. Serv. Comm'n v.
Wycoff*, 344 U.S. 237, 243 (1952).   Specifically, plaintiff has not identified the hypothetical film
with sufficient particularity; the requested declaratory relief, if granted  would extend to "any
motion picture *based on*" the 2010 Effie screenplay. Complaint at 11.  In other words, plaintiff
seeks a declaration with respect to a film that -- if made -- may hypothetically bear some vague
and unspecified  "based on" relationship to the 2010 Effie script, that in turn bears some
unspecified relationship to a 2009 Effie script as to which Mr. Murphy once expressed concern.

The film itself, moreover, need not even limit its content to the existing Effie scripts.  The
contract between Emma Thomson and plaintiff Effie Film LLC, attached to the Complaint as
Exhibit 1 ("Certificate of Results & Proceeds"), provides in paragraph 1.9 that Effie Film LLC
may *"change, add to, take from, translate, reformat or reprocess the* [2010] *Screenplay . . . in
any manner [plaintiff] may in its sole discretion determine."* Further, the agreement provides at
3.1 for certain screen credit "subject to the Picture being *based wholly or substantially* on the
[2010] Screenplay" (emphasis added).  Under its own agreement, the term "based on" is
undefined and utterly nebulous.

Further, under its own agreement, Effie Film LLC has sole discretion to use any other
material it chooses, apart from the 2010 Effie script.  Plaintiff is asking this Court to declare, in
advance, that such a film is non-infringing as a matter of law so long as it is to some degree also
"based on" the 2010 Effie screenplay.  As plaintiff has framed the requested relief, the

11

declaration would extend to a film "based on" the Effie screenplay even if it also incorporated additional large chunks of Mr. Murphy's dialog from *The Countess*.   The court cannot possibly lend its authority to such a perverse result.

Plaintiff's problem is not merely a matter of inartful pleading, however, and leave to amend would therefore be futile.  Any attempt to award declaratory relief regarding the hypothetical film is doomed as a matter of law because neither plaintiff nor anyone else in the world knows, in sufficient detail, what that film will eventually consist of; it is simply not "fixed and final."  Unless the court is presented with the "same product" as to which plaintiff seeks its declaration, relief cannot be granted.  See *Shloss*, supra at 1078 "In other words, the plaintiff 'must establish that the product presented to the court is the same product which will be produced if a declaration of noninfringement is obtained'," quoting *Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1378 (Fed. Cir. 2004).  Here the hypothetical film is a moving target, subject to an unlimited number of changes before its eventual completion, should it ever be completed. See *Sobini* at 1936 In addition, plaintiff's 'product' is subject to many changes before completion. Despite Plaintiff's insistence that the finished product will contain the 'traditional' Zorro elements, it is also possible that the final product will not infringe on any trademark.  The Court simply cannot determine at this stage whether Plaintiff's product, if completed, would infringe on an existing trademark. If the Court ruled now, it would simply be rendering an advisory opinion based solely upon Plaintiff's assertion that no matter what plot line is used, the film will include 'traditional' Zorro elements.")

Accordingly, until the hypothetical film actually exists, any ruling by the Court as to copyright infringement would simply be an advisory opinion, which our Courts may not Constitutionally offer.

C.   Plaintiff's Alleged Harm Is Not Sufficient to Create Jurisdiction

Plaintiff alleges in conclusory fashion, without factual support, that its ability to obtain financing for the hypothetical film will be impaired if this Court does not grant a declaration of non-infringement.   Even if this allegation were adequate pleading under *Twombly*, which it is not, it would not suffice to create jurisdiction for a declaratory judgment action where the hypothetical future dispute between *plaintiff and defendant* is so remote and speculative.   As the Second Circuit noted in *In re Combustion Equip. Assocs., Inc.*, 838 F.2d 35, 39 (2d Cir. 1988) "the presence of some possible harm from delaying litigation does not automatically render a dispute ripe."   A mere demand for declaratory relief, though perhaps it would be to plaintiff's advantage, "does not by itself establish a case or controversy necessary to confer subject matter jurisdiction." *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch., Inc.*, 24 F.3d 427, 431 (2d Cir. 1994).

Moreover, as the court held in *Sobini, supra*, "[w]hile the availability of declaratory relief in intellectual property actions often enables a potential infringer to avoid economically wasteful activity, this remedy does not allow him to avoid all potentially wasteful activity. . . . The justiciability requirement in Article III of the Constitution requires a potential infringer to engage in sufficient activity to demonstrate that an actual controversy is before the court. While a subsequent finding of infringement might render plaintiff's activity fruitless, that risk must be taken as a prerequisite to seeking judicial relief." *Sobini* at 1934   Here, plaintiff seeks to enlist the court's coercive power to address a business problem of plaintiff's own making, as between itself and its potential financiers.  Plaintiff cannot allege that the production of the hypothetical film would be impossible absent the requested declaration, only that it would be "highly unlikely." *See* Complaint ¶ 41.  Plaintiff cannot even allege that dragging Mr. Murphy into this Court for a declaratory relief action, squandering the court's ever-scarcer resources, is the only

13

way to address the plaintiff's business problem; an entire industry of errors and omissions insurance exists to deal with exactly this problem in the film business. If the hypothetical film is truly as non-infringing as plaintiff claims, plaintiff can surely obtain a legal opinion to that effect from competent counsel, sufficient to satisfy an insurance carrier. This honorable Court is not a proper forum for plaintiff to seek a faster or cheaper shortcut around the standard commercial realities of movie-making.

            D.        <u>Plaintiff Has No Reasonable Apprehension of Litigation</u>

After *MedImmune*, the plaintiff's "reasonable apprehension of litigation" is no longer an element that plaintiff must plead and prove. To the extent that the issue still has relevance, plaintiff here cannot possibly allege any threat with respect to the 2010 script as to which plaintiff seeks the present declaration, because Mr. Murphy has neither seen that 2010 script nor communicated about it with plaintiff in any way. The Complaint alleges that Mr. Murphy was provided a copy of the *Effie* script in July 2009, ¶ 35. That July 2009 script was the basis for the comments Mr. Murphy and his counsel made to plaintiff and/or its predecessors, and of all subsequent comments by Mr. Murphy and his counsel. The alleged "assertions of infringement" referenced in the Complaint at ¶¶ 34, 36, 37, 39, and 40, all related to this 2009 Effie script.

Now, however, plaintiff seeks a declaration with respect to a *different* script, one that plaintiff has represented to the U.S. Copyright Office was completed in 2010. See Complaint, Exhibit 3. Plaintiff does not here allege that this 2010 script bears any particular relationship to the 2009 script that was the basis of Mr. Murphy's alleged threats, and has not bothered to advise this Court, or the Copyright Office, as to the differences between the two. By plaintiff's own admission, however, the 2010 Effie script was not the document that triggered Mr. Murphy's alleged "assertions of infringement" in 2009. Accordingly, Mr. Murphy has never, either

14

explicitly or implicitly, threatened litigation with respect to the 2010 Effie script as to which plaintiff here seeks a declaration.

### 2. The Court Should Decline To Grant the Requested Relief

Even assuming *arguendo* that plaintiff has alleged a justiciable case or controversy, the court should exercise its discretion and decline to award the relief plaintiff seeks. As the Southern District noted in *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, 09 Civ. 7352 (JGK), 2010 U.S. Dist. LEXIS 96974 (S.D.N.Y. Sept. 16, 2010),

> even if there were an actual case or controversy and the Court had jurisdiction under the DJA, the court would decline to exercise that jurisdiction in this case. A court's exercise of jurisdiction pursuant to the DJA is discretionary. See *AARP*, 2009 WL 47401, at *4 ("Even after a plaintiff demonstrates that the case or controversy requirement has been met, the permissive language of § 2201(a) gives a district court discretion to determine whether or not it should actually exercise its declaratory judgment authority."). The Supreme Court reiterated in *MedImmune* that the DJA "confer[s]on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." 549 U.S. at 136 (internal citation and quotation marks omitted). The Court of Appeals for the Second Circuit has held that federal district courts must entertain declaratory judgment actions when the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" or "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (internal citation omitted). In this case there are significant factors that militate against exercising jurisdiction.

*Id.* at *16-17.

Here, as in *Bruce Winston*, the relief sought will not be complete or conclusive with respect to the parties and the Court should accordingly decline to award it. First, the relief will not be conclusive because as noted above the hypothetical film is a moving target, subject to change before its eventual hypothetical completion. If the Court resolves a dispute as to the

current version of the *Effie* script, or even the *Effie* film as presently contemplated, a new dispute could arise over the finished product to the extent that it is not identical. *See Shloss v. Sweeney*, 515 F. Supp. 2d 1068, 1078  (N.D. Cal. 2007) (where declaratory defendant resolved dispute as to earlier version of plaintiff's work by covenant not sue, claim could still go forward as to later, non-identical version of plaintiff's work: "Defendants could sue Plaintiff on the first day in which her website in its current form was made available to the public, notwithstanding their covenant not to sue [over earlier version]").

Moreover, a declaration in this case cannot be conclusive because Plaintiff has not sought and this Court should not issue a declaration of the parties' rights under laws of countries other than the United States.  In particular, Effie Film LLC has obtained the right to market the hypothetical film worldwide (Complaint, Exhibit 1, ¶ 1.2, "throughout the universe").  The purported subject of the hypothetical film is the scandalous personal life of a noted UK art critic, and the alleged author of the *Effie* script is a noted UK film personality.  It is therefore beyond reasonable doubt that Effie Film LLC would seek to exploit the hypothetical film in the UK, if it were made, and that an inability to exploit the hypothetical film in that market would be of concern to the financiers of the hypothetical film. The same is true, though perhaps to a lesser extent, with respect to other non-US markets.

The relief sought by plaintiff here would not alleviate that concern, and would thus leave plaintiffs in exactly the position they now claim to occupy, *i.e.*, unable to close financing for the hypothetical film. As this Court observed in *Crane v. Poetic Products, Ltd.*, 593 F. Supp. 2d 585, 596 (S.D.N.Y. 2009):

> In this case, no foreign action has been brought, nor does Defendant make any counterclaims of U.K. copyright infringement in this forum. Granting equitable relief in the form of a declaratory judgment would thus not only offend international comity, it would

16

be premature, regardless of any alleged similarities between the U.S. Copyright Act and the U.K. Copyright, Designs and Patent Act. For these reasons, the Court declines to grant a declaratory judgment that Plaintiff has not infringed Defendant's U.K. copyrights.

Absent a declaration as to Plaintiff's hypothetical film in the UK and other non-US territories, which would "offend international comity," Plaintiff's ability to finance the production of its hypothetical film would still be impaired, and thus this Court's judgment could not be fully conclusive as between the parties.

## CONCLUSION

Based on the above reasons and authorities, Defendant Gregory Murphy respectfully requests that the Court grant an Order dismissing Plaintiff's action for declaratory relief with prejudice pursuant to Rule 12(b)(6) and 12(b)(1), Fed. R. Civ. Pro.; ordering Plaintiff to pay Defendant's reasonable attorneys fees in connection with this motion; and granting such other and further relief as the court deems appropriate.

Dated: New York, New York
       March 1, 2011

                              COWAN LIEBOWITZ & LATMAN, P.C.


                         By:
                              */s/ Robert W. Clarida*
                              Robert W. Clarida
                              Benjamin Sahl

                              1133 Avenue of the Americas
                              New York, New York  10036
                              (212) 790-9200

                              Attorneys for Defendant
                              GREGORY MURPHY