Andrew L. Deutsch
E. O'Brien Kelley
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Telephone (212) 335-4500
Facsimile (212) 335-4501

*Attorneys for Plaintiff Effie Film, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

EFFIE FILM, LLC
                Plaintiff,

       - against -

GREGORY MURPHY,

              Defendants.

     :      11 CV 0783 (TPG)

---------------------------------------------------------------- x

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT .................................................................................................................... 4

I     THE COURT HAS SUBJECT MATTER JURISDICTION TO ISSUE A
DECLARATORY JUDGMENT OF NON-INFRINGEMENT ....................................... 4

     A.    The Standard on a Motion to Dismiss for Lack of Subject Matter
Jurisdiction .......................................................................................................... 5

     B.    EFL Has Shown A Justiciable Case or Controversy ........................................... 5

          1.    The Court Has Independent Jurisdiction over the Claims of EFL's
Complaint .................................................................................................. 5

          2.    The Supreme Court's Decision in *MedImmune* Liberalized the Law
of Declaratory Judgments ......................................................................... 6

          3.    EFL Is Engaging In "Material Preparation" of the Film Version
of Effie, and will be Able To Commence Production Once The
Impediment of Murphy's Infringement Claims Is Removed ..................... 8

          4.    The Final Version of the *Effie* Screenplay Is In Fixed Form and, if
the Court Grants a Declaratory Judgment, will be Filmed as
Written ..................................................................................................... 10

          5.    Murphy's Claims of Infringement Establish an Adversarial
Conflict .................................................................................................... 12

          6.    Murphy's Jurisdictional Arguments Are Meritless .................................. 13

II    EFL HAS STATED A VALID CAUSE OF ACTION FOR DECLARATORY
JUDGMENT ............................................................................................................ 20

CONCLUSION ............................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*AARP v. 200 Kelsey Assocs., LLC,*
  06 Civ. 81 (SCR), 2009 WL 47499 (S.D.N.Y. Jan. 8. 2009) ........................................... passim

*Adenta GMbH v. Orthoarm, Inc.,*
  501 F.3d 1364 (Fed. Cir. 2007).................................................................................13

*APWU v. Potter,*
  343 F.3d 619 (2d Cir. 2003)......................................................................................5

*Ashcroft v. Iqbal,*
  129 S.Ct. 1937 (2009)..............................................................................................20

*Associated Indem. Corp. v. Fairchild Industries, Inc.,*
  961 F.2d 32 (2d Cir. 1992)......................................................................................15

*Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.,*
  968 F.2d 196 (2d Cir. 1992)......................................................................................5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007)......................................................................................20

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................................20

*Bruce Winston Gem Corp. v. Harry Winston Inc.,*
  09 Civ. 7352 (JGK), 2010 WL 3629592 (S.D.N.Y. Sept. 16, 2010)................................5, 7, 8

*Continental Cas. Co. v. Coastal Sav. Bank,*
  977 F.2d 734 (2d Cir. 1992)................................................................................12, 18

*Crane v. Poetic Products, Ltd.,*
  593 F. Supp. 2d 585 (S.D.N.Y. 2009).........................................................................19

*Diamonds. Net, LLC v. IDEX online, Ltd.,*
  590 F. Supp. 2d 593 (S.D.N.Y. 2008).........................................................................13

*Elecs. For Imaging, Inc. v. Coyle,*
  394 F.2d 1341 (Fed. Cir. 2005)................................................................................16

*Employers Ins. of Wausau v. Fox Entertainment Group, Inc.,*
  522 F.3d 271 (2d Cir. 2008).....................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Goldman v. West*,
No. 06 Civ. 3413 (LTS) (RLE), 2007 WL 1989291 (S.D.N.Y July 6, 2007) ..........................7

*Kramer v. Lockwood Pension Services, Inc.*,
653 F. Supp. 2d 354 (S.D.N.Y. 2009)....................................................................15

*Lang v. Pacific Marine and Supply Co., Ltd.*,
895 F.2d 761 (9th Cir. 1990) .........................................................................14, 15

*Laureyssens v. Idea Group, Inc.*,
964 F.2d 131 (2d Cir. 1992)..................................................................................11

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007).............................................................................. passim

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)...............................................................................................8

*Micron Tech. v. Mosaid Techs., Inc.*,
518 F.3d 897 (Fed. Cir. 2008)..........................................................................7, 13

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010)...................................................................................11

*Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*,
896 F. 2d 674 (2d Cir. 1990)..................................................................................5

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*,
523 F. Supp. 376 (S.D.N.Y. 2007) .........................................................................7

*SanDisk Corp. v. STMicroelectronics, Inc*,
480 F.3d 1372 (Fed. Cir. 2007)..............................................................................7

*Sierra Applied Sciences, Inc. v. Advanced Energy Indus, Inc.*,
363 F.3d 1361 (Fed. Cir. 2004)........................................................................11, 17

*Sobini Films v. Tri-Star Pictures, Inc.*,
61 U.S.P.Q. 2d 1930 (C.D. Cal. 2001)........................................................16, 17, 18

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)................................................................................................8

*Starter Corp. v. Converse, Inc.*,
84 F.3d 592 (2d Cir. 1996).......................................................................... passim

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Teva Pharmaceuticals USA, Inc. v. Eisai Co., Ltd.*,
    620 F.3d 1341 (Fed. Cir. 2010)......................................................................19

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)..............................................................................19

**STATUTES**

17 U.S.C. § 101...............................................................................................6

28 U.S.C. §§ 1331............................................................................................6

28 U.S.C. § 2201(a) .........................................................................................6

**OTHER AUTHORITIES**

U.S. Constitution, Art I, § 8, cl. 8 ....................................................................8

Plaintiff Effie Film, LLC ("EFL") respectfully submits this memorandum in opposition to the motion to dismiss of defendant Gregory Murphy ("Murphy").

The Court should deny the motion in its entirety. First, the Court should deny plaintiff's motion under Fed. R. Civ. P. 12(b)(1), because the Court has jurisdiction to grant a declaratory judgment here. EFL, a production company, is the assignee of all motion picture rights in *Effie*, a screenplay written by the Academy Award®-winning screenwriter and actress, Emma Thompson. The screenplay concerns the lives of actual historical figures: the Victorian art critic John Ruskin, his wife Effie Gray, and the painter John Everett Millais. EFL plans to produce a movie, also named *Effie*, directly from the screenplay starting in August 2011.

The declarations of Ms. Thompson and Donald Rosenfeld, the head of EFL and the producer of *Effie*, which must be taken as true on this motion, establish all the required elements for declaratory judgment jurisdiction. EFL has secured financing sufficient to meet *Effie's* planned production budget, obtained commitments from key cast and crew members, and done most of the preparations necessary to start filming. Thus, EFL has both the definite intention to make the film of *Effie* and has undertaken the active preparation needed to start filming.

However, EFL has been stymied in moving to production by infringement claims asserted by Murphy. Murphy asserts that *Effie* infringes a copyright which he holds in a play and screenplay called *The Countess*, which also concerns the lives of Ruskin, Gray and Millais. He asserts that Ms. Thompson had access to his scripts. Having read a nearly–final version of the *Effie* screenplay, Murphy also asserts that it is substantially similar to his *The Countess* writings. His attorneys have threatened Ms. Thompson, and then EFL, with an infringement suit. Such a suit, with the risk of injunction, would be disastrous for the film, and the lead producer cannot risk his investors' money in the film while that threat remains. Thus, EFL has shown an actual

controversy, the legal adversity required for a declaratory judgment, and the plain need for such relief: without a judicial declaration that the screenplay of *Effie* does not infringe *The Countess*, the *Effie* screenplay cannot be translated into film.

The court is not being asked to give an advisory opinion on hypothetical or shifting facts. EFL's declarations show that the screenplay of *Effie* is a fixed, final "shooting script." Ms. Thompson's dialogue and stage directions will be performed by the film's actors, and her visual cues will be filmed by the director. Moreover, the screenplay contains *all* of the elements of a prior draft that Murphy did review and that he claims is an infringement of his copyrights. By comparing the *Effie* screenplay with the screenplay of *The Countess*, and determining that the two works are not substantially similar, the Court will fully and finally decide the real controversy here: whether the film of *Effie* will infringe Murphy's copyrights.

The Court should also deny Murphy's Rule 12(b)(6) motion for failure to state a claim. The complaint alleges facts which, if proven, plausibly establish EFL's entitlement to a declaratory judgment of non-infringement.

## STATEMENT OF FACTS

EFL is a production company headed by Donald Rosenfeld. Mr. Rosenfeld is a producer with over 30 years experience. (Declaration of Donald Rosenfeld ("**DR**") ¶ 7). He was previously president of one of the leading independent production houses, Merchant Ivory Productions. Three of the films he produced or co-produced have won or been nominated for Academy Awards®. (DR ¶ 8). EFL has acquired the rights to make a major motion picture from a screenplay titled *Effie*, written by Emma Thompson. (DR ¶ 2). Ms. Thompson is not only the winner of an Academy Award® for Best Actress, but is also the only person to ever win an Academy Award® for both acting and screenwriting (Best Adapted Screenplay for *Sense and*

*Sensibility* in 1995). (DR ¶ 13). *Effie* is a dramatization of the lives of real historical figures: it explores the triangular relationship between the Victorian-era art critic John Ruskin, his wife Effie Gray, and the painter John Everett Millais. (Declaration of Emma Thompson ("**ET**") ¶ 7).

Mr. Rosenfeld, over the past year, has taken most of the steps necessary to produce a motion picture from the *Effie* screenplay (which, as of July 2010, was in final, "shooting script" form) (DR ¶ 27; ET ¶ 40). Among other things, he has established a production budget and obtained sufficient financing to cover the expenses of production; he has obtained commitments from leading actors and actresses to join the film's cast; he has retained a director, cinematographer, editor, production designer, and other professionals necessary to the creation of a film; he has scouted locations for shooting; and he has negotiated with U.S. and international distributors. (DR ¶¶ 25-26, 31-37).

Murphy is a New York playwright who had one play, *The Countess*, produced off-Broadway in 1995. *The Countess* also is a fictional treatment of the historical Ruskin-Gray-Millais relationship. He has adapted his play into a screenplay, also named *The Countess*. When, in 2009, it was reported that Ms. Thompson was working on the *Effie* project, Murphy, through an intermediary, claimed that he had sent both the playscript and screenplay of *The Countess* to Thompson and her husband. (ET ¶ 20; Ex. 4). When Ms. Thompson's then-producers in the UK denied that Ms. Thompson had had access to or copied from any version of *The Countess*, (ET, Ex. 6) Murphy threatened an infringement action. (ET, Ex. 7). He was then allowed to read an April 3, 2009 draft of *Effie*. (ET ¶ 22). After this, in July 2009, Murphy wrote a letter delineating what he believed were the actionable similarities between *Effie* and his screenplay of *The Countess*. (ET, Ex. 8).

Solely because Murphy threatened to derail the *Effie* project by his infringement claims, the UK producers entered into settlement discussions with him (while consistently maintaining that there had been no infringement). (ET ¶ 34). However, Murphy's demands for both money and screen credit escalated to the breaking point. Donald Rosenfeld then stepped in and assumed full production of the *Effie* project. (DR ¶ 16; ET ¶¶ 34-36). His attorney sent a letter to Murphy's attorney detailing why *Effie* and *The Countess* were not substantially similar. (DR, Ex. 4). Murphy responded by continued threats of suit against both Ms. Thompson and EFL, the company producing the film of *Effie*, and a statement that substantial similarity could only be determined by "a careful and meticulous review of both scripts." (DR, Ex. 5). This action followed.

At the time the complaint was filed in this case, the final version of the *Effie* screenplay had been completed by Ms. Thompson. (ET ¶¶ 2, 38). She, Mr. Rosenfeld, and the director of *Effie* have all agreed that no rewrites will be needed and that what is in the "shooting script" will be filmed during the production of *Effie*. (DR ¶ 27; ET ¶ 40). Moreover, there are only minor changes between the "shooting script" and the April 2009 draft that Murphy reviewed and claimed was an infringement of his copyright. (ET ¶ 38). All of the elements which Murphy claimed were similar to *The Countess* in his July 2009 letter remain in the final version of *Effie* and will be part of the produced film. (ET ¶ 39).

**ARGUMENT**

**I**

**THE COURT HAS SUBJECT MATTER JURISDICTION TO ISSUE A
DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

Murphy has asserted both a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and a motion to dismiss for lack of jurisdiction to issue a declaratory judgment

4

under Fed. R. Civ. P. 12(b)(1).  Under well-settled principles, the Court should first determine the jurisdictional question.  *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F. 2d 674, 678 (2d Cir. 1990); *AARP v. 200 Kelsey Assocs., LLC*, 06 Civ. 81 (SCR), 2009 WL 47499, at 3* (S.D.N.Y. Jan. 8. 2009).

## A.     The Standard on a Motion to Dismiss for Lack of Subject Matter Jurisdiction

On a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden of proving the Court's jurisdiction by a preponderance of the evidence.  *Bruce Winston Gem Corp. v. Harry Winston Inc.*, 09 Civ. 7352 (JGK), 2010 WL 3629592 (S.D.N.Y. Sept. 16, 2010).  The Court must accept all factual inferences in the complaint as true.  *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).  In addition, where the defendant has contested subject matter jurisdiction on a factual basis (as Murphy has by submitting an affidavit in support of his motion), the Court has the "power and obligation to decide [these] issues of fact by reference to evidence outside the pleadings, such as affidavits."  *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003); *see also Bruce Winston Gem Corp., supra*, at *1 (declaratory judgment action).  Thus, for purposes of this motion, the Court should consider the factual statements contained in the accompanying Thompson and Rosenfeld Declarations.

## B.     EFL Has Shown A Justiciable Case or Controversy

### 1.     The Court Has Independent Jurisdiction over the Claims of EFL's Complaint

The Declaratory Judgment Act (DJA) does not expand the jurisdiction of the federal courts, but merely provides an additional remedy in controversies where federal jurisdiction already exists.  Thus, a declaratory judgment plaintiff must first show that there is an independent basis for federal jurisdiction.  Here, there is no dispute that the Court has an

independent basis for federal jurisdiction. EFL's complaint alleges that its claims arise under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1331 (federal question) and 1338 (original jurisdiction over claims arising under copyright law). Complaint ¶ 13.

2.   The Supreme Court's Decision in *MedImmune* Liberalized the Law
      of Declaratory Judgments

Because the DJA permits a court to issue a declaratory judgment only "[i]n a case of actual controversy within its jurisdiction," 28 U.S.C. § 2201(a), the declaratory plaintiff must also establish the existence of a "case of actual controversy." Murphy's jurisdictional contention is that EFL cannot show an actual controversy. He is wrong in all respects.

The Supreme Court's decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), substantially liberalized the federal law of declaratory judgments. Before *MedImmune*, it was the law in the Second Circuit and elsewhere that a plaintiff seeking a judgment of non-infringement must show (1) that the defendant's conduct "created a real and reasonable apprehension of liability on the part of plaintiff," and (2) that the plaintiff had "engaged in a course of conduct which has brought it into adversarial conflict with the defendant." *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595-96 (2d Cir. 1996). However, *MedImmune* rejected at least the first part of the *Starter* analysis.

The *MedImmune* plaintiff was a patent licensee. It sought a declaratory judgment against its licensor that the patent was invalid, but, because the plaintiff felt compelled to continue to pay royalties to avoid an injunction against sales, it could not claim that it reasonably apprehended an imminent suit by the licensor. Reversing the Federal Circuit, the Supreme Court held that an actual controversy nevertheless existed. The test of an actual controversy, *MedImmune* held, was:

> Whether the facts alleged, under all the circumstances, show that
> there is a substantial controversy, between parties having adverse

> legal interests, of sufficient immediacy and reality to warrant the
> issue of a declaratory judgment.

549 U.S. at 127. The Court also said that the dispute must be "real and substantial and admit of

specific relief through a decree of a conclusive character as distinguished from an opinion

advising what the law would be upon a hypothetical state of facts." *Id.* (internal citation,

quotation marks and alterations omitted). The Court specifically rejected any requirement that

the plaintiff have a reasonable apprehension of imminent suit. *Id.* at 132 n. 11.[1]

The courts of this Circuit agree that *MedImmune* have "lower[ed] the bar for a plaintiff to

bring a declaratory judgment action." *Goldman v. West*, No. 06 Civ. 3413 (LTS) (RLE), 2007

WL 1989291 at *3 (S.D.N.Y. July 6, 2007); *see also Ass'n for Molecular Pathology v. U.S.*

*Patent and Trademark* Office, 669 F. Supp. 2d 365, 390 (S.D.N.Y. 2009) (*MedImmune*

establishes a "more lenient standard [that] enhances or facilitates the availability of declaratory

judgment jurisdiction in patent cases" (citing *Micron Tech. v. Mosaid Techs., Inc.*, 518 F.3d 897,

902 (Fed. Cir. 2008)); *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine*

*USA, Inc.*, 523 F. Supp. 376, 382 (S.D.N.Y. 2007).

Thus, Murphy's subject matter jurisdiction challenge raises only two issues: (1) whether

the infringement dispute between EFL, the entity preparing to make *Effie* into a motion picture,

and Murphy, the alleged copyright holder in the play and screenplay of *The Countess*, is "real

and substantial," *MedImmune*, 549 U.S. at 127, and (2) whether a declaratory judgment resolving

the question of infringement would resolve the parties' dispute. Under "all the circumstances" of

this case, *id.,* both questions must be answered yes.

---

[1]     Later courts agree that *MedImmune* did away with the "reasonable apprehension" portion of the actual
controversy analysis. *SanDisk Corp. v. STMicroelectronics, Inc*, 480 F.3d 1372, 1380 (Fed. Cir. 2007), *Bruce
Winston Gem Corp.* at *3; *AARP* at.*6-7.

3.   EFL Is Engaging In "Material Preparation" of the Film Version
of *Effie*, and will be Able To Commence Production Once The
Impediment of Murphy's Infringement Claims Is Removed

While "reasonable apprehension of suit" is no longer required after *MedImmune*, the second prong of *Starter*'s justiciability analysis – whether the plaintiff has "engaged in a course of conduct which has brought it into adversarial conflict with the defendant," 84 F.3d at 595 – is generally viewed as still viable. *Bruce Winston Gem Corp.* at *11-12; *AARP* at *7. This test examines whether the plaintiff has gone beyond having a "vague and general desire" to use some intellectual property, and is taking meaningful steps towards production of the allegedly infringing article. *Starter*, 84 F.3d at 596.

In *Starter*, the declaratory judgment plaintiff intended to sell footwear bearing a star-shaped mark, and sought a declaration that the use would not infringe on the defendant's own footwear marks. The Second Circuit, noting the close analogy between patents and trademarks, adopted a concreteness test originating in patent cases: whether the plaintiff has "engaged in a course of conduct evidencing a 'definite intent and apparent ability to commence use' of the marks on the product." *Starter*, 84 F.3d at 595-96 (citations omitted).[2] This second prong of *Starter* does *not* require a plaintiff to show that it is currently using the disputed intellectual property, such as a trademark. *Id.* at 596. Rather, the plaintiff need only show that it is engaged in "'meaningful preparation.' . . . such that it is 'actively preparing to produce the article in question.'" *Id.* (citations omitted). Meaningful preparation can also be found if the "plaintiffs' normal course of business rendered them meaningfully prepared to engaged in the infringing activity at issue." *Ass'n for Molecular Pathology*, 669 F. Supp. 2d at 390.

---

[2]      This test is equally applicable where a plaintiff seeks a declaratory judgment that it has not infringed a copyright. Patent and copyright are part of the same constitutional grant of power to Congress, *see* U.S. Constitution, Art I, § 8, cl. 8, and many legal doctrines first arising in patent law were later applied in the copyright context. *See, e.g., Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984) ("staple article of commerce" doctrine); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005) (inducement of infringement doctrine).

Obviously, meaningful preparation will differ according to the facts of the case. *See Starter* (plaintiff showed that it had invested time and money, designed the shoes that would bear the disputed mark, made decisions as to who would manufacture the shoes, and hired a licensing agent); *AARP* (defendant engaged in meaningful preparation by designing and creating the disputed mark and designing a magazine to be published under the mark). The fact that additional steps may have to be taken before allegedly-infringing conduct can begin does not bar a declaratory judgment. In *AARP*, the defendant had not yet taken an essential step in its plans (finding a licensing partner), but the court still found declaratory judgment jurisdiction. 2009 WL 47499 at *9.

EFL's declarations show that at the time this action was started, and even more so today, EFL has the current business ability to make a movie from the *Effie* screenplay, and has taken most of the steps to produce the film short of actual filming. Mr. Rosenfeld is a producer with great experience in making feature films. He has put enormous effort into the *Effie* project, having spent at least 100 days in the last 10 months (including 55 days on the road (DR ¶ 25)), securing financing, commitments from cast and crew, scouting locations, discussing the screenplay, finding both U.S. and international distributors, and establishing a production budget. These are the essential elements for making a motion picture. EFL owns the rights to the screenplay of *Effie*, written by Ms. Thompson, a winner of the Academy Award® for screenwriting. Like the finished trademarks in *Shooter* and *AARP*, the *Effie* screenplay is also in final, "shooting script" form, and will not be materially revised before filming. (DR ¶ 27; ET ¶ 40).

EFL has obtained commitments to act in the movie from leading actors (in addition to Ms. Thompson) such as Orlando Bloom, Kathy Bates (another Academy Award® winner) and

Sir Derek Jacobi. Mr. Rosenfeld has also obtained commitments from established production personnel, including a director, director of photography (cinematographer), composer, casting director, editor, production designers and more. (DR ¶ 36). By the intended start of shooting (August-September 2011), EFL will be fully prepared to make *Effie*. Despite the impediments created by Murphy's assertions of infringement, EFL has been able to secure the financing necessary to make the film. (DR ¶ 31, Exs. 6-7).

EFL's declarations conclusively show that EFL has a definite intent to make a film from the existing *Effie* screenplay, that Mr. Rosenfeld and others have been engaged in "meaningful preparation" of the film for many months, and that EFL has the ability as of this summer (when its cast will be free of conflicting commitments), to begin and complete the film. (DR ¶ 24). A declaratory judgment plaintiff need show no more.

4. The Final Version of the *Effie* Screenplay Is In Fixed Form and, if the Court Grants a Declaratory Judgment, will be Filmed as Written

Murphy contends that the dispute is not "sufficiently fixed and final" because EFL might make a very different film than the *Effie* screenplay that Mr. Murphy saw in 2009 and which he has consistently asserted infringes his copyrights. Def. Br. at 11-12. Again the facts, as established in EFL's declarations, disprove Murphy's speculation.

The April 3, 2009 screenplay of *Effie*, which Mr. Murphy admits he saw and read, is 99%+ the same as the final version of *Effie* (completed in May 2010), from which the film will be made. As the author, Ms. Thompson, declares and shows in detail, only very minor changes have been made in the final version from the April 2009 draft of Effie that Murphy claims is infringing. (ET ¶ 38; Ex. 10). All of the elements that Murphy claimed were infringing in July 2009 (ET, Ex. 8) are still in the screenplay, exactly as he saw them twenty months ago. (ET ¶ 39).

Most importantly, the current final version is a "shooting script" – it sets forth the dialogue the actors will perform, the stage directions that they will follow, and the visual cues that the director and cameraman will capture on film. (DR ¶ 27). While EFL may have a contractual right to require rewrites (as all producers do), Mr. Rosenfeld, Ms. Thompson, and the director, Richard Laxton, have determined that they are satisfied with the screenplay and that no rewrites will be necessary. (ET ¶ 40; DR ¶ 27). The film *Effie* will therefore be a direct translation of the screenplay into a visual medium.

Whether the controversy between the parties is of "sufficient . . . reality," *MedImmune*, 527 U.S. at 127, is determined by "whether the design of the potentially infringing subject of the declaratory-judgment suit was substantially *fixed*, particularly with respect to its potentially-infringing characteristics, on the date the complaint was filed." *Sierra Applied Sciences, Inc. v. Advanced Energy Indus, Inc.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004) (emphasis in original). Here, without question, the "design" of the film *Effie*, including any aspects that could have potentially been copied from the play or screenplay of *The Countess*, was fixed as of the date EFL's complaint was filed, and those fixed elements will be incorporated into the film.

This fact permits the Court to grant complete relief in this case. One work does not infringe copyright in a second work unless there is a substantial similarity between the protectable elements in the two works. *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139-40 (2d Cir. 1992). The Court can determine the question of substantial similarity here on a Rule 12(c) motion on the pleadings, simply by comparing the final *Effie* screenplay to the playscript and screenplay of *The Countess*.[3]   No discovery will be needed. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63-64 (2d Cir. 2010) (substantial

---

[3]    As is typical in such motions, EFL will assume, for purposes of the motion only, that Ms. Thompson did have access to the two versions of *The Countess*.

similarity may be decided as a matter of law on a motion to dismiss or motion on the pleadings
where the works at issue are attached to or directly referenced in the complaint).

A ruling by the Court that the screenplay of *Effie* is not substantially similar to the two
written versions of *The Countess*, and therefore not infringing, will also mean that the film made
directly from the final *Effie* screenplay is not infringing.  The Court's determination of non-
infringement will permit EFL to produce and distribute the film of *Effie* without fear of a
copyright infringement lawsuit and injunction.  Thus, the final piece of declaratory judgment
jurisdiction is in place: the Court's decree will be "conclusive" of the dispute between the
parties, *MedImmune*, 549 U.S. at 127, and will "terminate and afford relief from the uncertainty
[and] insecurity" created by Murphy's threats of infringement.  *Continental Cas. Co. v. Coastal
Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992).

    5.    <u>Murphy's Claims of Infringement Establish an Adversarial Conflict</u>

There is also no serious question that EFL is in "adversarial conflict" with Murphy,
sufficient "to meet the actual case or controversy requirement."  *Starter,* 84 F.3d at 597.  From
July 2009 onwards, Murphy has consistently asserted that the screenplay of *Effie* infringes his
copyrights in *The Countess*.  These threats have increased from claiming that "*Effie* and *The
Countess* are distinctly related in character development, structure, and tone," (ET, Ex, 8), to
asserting that he will "take steps to protect our rights as well as the ancillary rights of investors in
the original Off-Broadway production of *The* Countess," (ET, Ex. 9).

Most recently, Murphy's lawyer made the claim of infringement overtly, stating that "it
is my client's belief that the screenplay entitled "Effie" . . . is substantially to Mr. Murphy's
screenplay and that Mr. Murphy will be able to prove that Mr. Wise and Ms. Thompson were
sent and received a copy of Mr. Murphy's play and screenplay, "The Countess," prior to their
announcement of "Effie."  She further stated that her client had "rights in law and equity, which

[they] are entitled to bring, against Effie LLC, Ms. Thompson, Mr. Wise, including without limitation all actual and liquidated damages and actions." (DR, Ex. 5).

Even after *MedImmune*, threats of infringement suits like those Murphy has made are strong evidence that an actual and adversarial controversy exists between the parties. *See Micron Tech, Inc.*, 518 F.3d at 901 (threatening letters); *Adenta GMbH v. Orthoarm, Inc.*, 501 F.3d 1364, 1366 (Fed. Cir. 2007) (letter from patent licensor stating that if licensee stopped paying royalties on grounds of patent invalidity, licensor would "pursue its available remedies"); *Diamonds. Net, LLC v. IDEX online, Ltd.*, 590 F. Supp. 2d 593 (S.D.N.Y. 2008) ("[T]he trend is to find an actual controversy . . . where the declaratory judgment plaintiff's product arguably practices a patent and the patentee has given some indication it will enforce its rights.").

Murphy's infringement claims, and the adversarial conflict, extend to the final version of the *Effie* screenplay, regardless of whether Murphy has seen that version. *Cf.* Def. Br. at 14-15. As Ms. Thompson states, the final version is almost identical to the April 2009 *Effie* Draft that Murphy reviewed. (ET ¶ 38, Ex. 10). More importantly, *all* of the dialogue, characterization, and plot elements of the April 2009 draft that Murphy claimed were infringing remain unaltered in the final version of the screenplay of *Effie*, and will be included in the film. (ET ¶¶ 39-40). Thus, Murphy's claims of infringement and threats of litigation must be considered to apply as well to the film of *Effie*. He cannot avoid a judicial reckoning by asserting that he has not seen the final version of the *Effie* screenplay.

6.   Murphy's Jurisdictional Arguments Are Meritless

(i)   EFL Is Not Required to be Immediately Ready to Distribute
      the Film of *Effie* in Order to Seek a Declaratory Judgment

Murphy argues that the Court lacks jurisdiction because EFL cannot show that it is "immediately" ready to distribute the film of *Effie*. Def. Br. at 7-8. But this is not the law. The

legal test for a declaratory judgment of non-infringement is whether, under "all the circumstances," *MedImmune*, 527 U.S. at 127, the plaintiff has "a definite intent and apparent ability to commence use" of an allegedly infringing mark or other intellectual property. *Starter*, 84 F.3d at 595-96. *See also Ass'n for Molecular Pathology*, 669 F. Supp. 2d at 390-91 (the test is whether the declaratory judgment plaintiff is "meaningfully prepared to engage in the infringing act such that the court's decision would serve as more than an 'advisory opinion.'); *AARP*, 2009 WL 47499 at *9 (denying motion to dismiss declaratory judgment action even though the infringing defendant had not secured a licensing partner, which was necessary to the use of the disputed mark in a magazine).

Murphy suggests, pointing to *Lang v. Pacific Marine and Supply Co., Ltd.*, 895 F.2d 761 (9th Cir. 1990), that if a film producer cannot complete and exhibit a film within nine months of a favorable declaratory judgment, the court lacks jurisdiction to grant relief. Def. Br. at 9. This is an egregious misreading of *Lang*. *Lang* involved a plaintiff seeking a declaratory judgment against a defendant who was in the process of building a boat hull. The plaintiff claimed that the hull, once completed would infringe its patents. The court affirmed dismissal on grounds that the hull would not be completed until at least nine months after the filing of the complaint, *and* the failure of the accused infringers to show that they had "distributed sales literature, prepared to solicit orders, or engaged in any activity indicating that the ship would soon be ready for sea." *Id.* at 764-65.

However, as *MedImmune* points out, every declaratory judgment case must be decided on its own facts and circumstances. 527 U.S. at 127. Here, *Effie* is not in the process of "being built." At the time this action was commenced, the *Effie* screenplay was in fixed and final form, ready for filming, and the producer and director had decided that rewrites were not needed. As

14

noted above, the Court can definitively rule on whether the film of *Effie* infringes copyright in

*The Countess* by comparing the screenplay of *Effie* to the two written versions of *The Countess*.

And, in contrast to *Lang*, EFL had taken meaningful preparations to make an *Effie* film as of the

time this lawsuit was filed, including financing, budgeting, engaging an experienced cast and

crew, arranging for distribution, and location scouting.  Mr. Rosenfeld also establishes that if this

Court is able to grant a timely declaratory judgment, *Effie* will be able to begin and complete

production in the summer and fall of 2011.[4]  (DR ¶ 5).

Murphy's "immediately" argument also ignores the obvious differences between a

manufacturing business and how motion pictures are made.  A widget factory may be able to

turn out widgets immediately after a court issues a declaratory judgment, but as Murphy

acknowledges, a feature motion picture may take a year to produce, edit, and print before its

premiere.  Were there some sort of ironclad "immediately" or "nine month" restriction on

declaratory judgments, that vital remedy, so helpful in resolving intellectual property disputes

without the risks and costs of full-blown litigation, would never be available to the motion

picture industry.

Under Murphy's view, producers would have to spend millions of dollars to make a film,

just to be able to go to court for a determination of whether the film infringes another's

---

[4]    The fact that there may still be some contingencies before the film of *Effie* can be made, such as the casting
of some roles, does not defeat declaratory judgment jurisdiction.  A court has power to issue a declaratory judgment
where there is a practical likelihood that such contingencies will occur. *Employers Ins. of Wausau v. Fox
Entertainment Group, Inc.*, 522 F.3d 271, 278 (2d Cir. 2008) (quoting *Associated Indem. Corp. v. Fairchild
Industries, Inc.*, 961 F.2d 32, 35 (2d Cir. 1992)); *Kramer v. Lockwood Pension Services, Inc.*, 653 F. Supp. 2d 354,
374 (S.D.N.Y. 2009).  Here, EFL, headed by an experienced producer, has obtained sufficient financing, engaged
key cast and crew members, and done most of the work necessary to produce a film.  It is a practical likelihood (if
not a certainty) that these veteran filmmakers will complete the limited remaining steps needed before shooting of
*Effie* commences.

copyrighted work.[5] But "[t]he rule that a plaintiff must . . . bet the farm. . . before seeking a declaration of its actively contested rights finds no support in Article III." *MedImmune*, 549 U.S. at 133. Moreover, under Murphy's scheme, if a frivolous copyright claimant threatened an infringement suit against a film ready to be produced, producers would have only two alternatives: pay an extortionate settlement or not make the film at all. Murphy would turn back the clock to the days before the DJA, when "competitors were rendered helpless and immobile so long as the [copyright] owner refused to grasp the nettle and sue." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.2d 1341, 1346 (Fed. Cir. 2005).

The DJA was enacted to solve the problem that Murphy apparently wants to resurrect. The DJA ensured that commercial parties "were no longer restricted to an in terrorem choice between the incurrence of . . . liability for . . . infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests." *Id.* (citations omitted). Makers of motion pictures are just as entitled as makers of patented or trademarked articles to a remedy that clears the air of questionable copyright infringement claims.

### (ii)   *Sobini Films* is Clearly Distinguishable

Murphy relies for most of his argument on a single decision, *Sobini Films v. Tri-Star Pictures, Inc.*, 61 U.S.P.Q. 2d 1930 (C.D. Cal. 2001). See Def. Br. at 8, 9, 10, 12, 13. But *Sobini Films* is obviously and meaningfully different from the present facts in every relevant respect. The plaintiff in *Sobini Films* had a "treatment" for a movie about the Zorro character, and wanted the court to determine that a film made from the treatment would not infringe defendants' claimed copyright in Zorro. *Id.* at 1930. A treatment, however, is not a final

---

[5]   The problem cannot be solved by taking out insurance, as Murphy suggests. Def. Br. 14. Any rational insurer will exclude *known* infringement claims from policy coverage.

screenplay. It is a five to fifteen page document, used to "pitch" a story idea to possible backers. A treatment is a rudimentary outline of a story, written in the present tense. It has little character description and little if any dialogue. (DR ¶ 28). It is accepted in the film business that a treatment is likely to be substantially rewritten and changed if a screenplay is created. (DR ¶ 29). The *Sobini Films* court recognized this difference, noting that the plaintiff there had "not entered into a contract with a writer (or writers) to create a screenplay" for a Zorro movie. 61 U.S.P.Q. 2d at 1934.

The contrasts between *Sobini Films* and the current facts could not be greater. EFL has entered into a contract with an award-winning screenwriter, granting the right to make a film of *Effie*. Ms. Thompson has created a complete screenplay of 111 pages and 187 scenes. All the dialogue and production directions are included in the screenplay; no detail is left for a later decision. And, as noted above, the parties have represented that this screenplay is a "shooting script" which will be produced by EFL in its present form. (DR ¶ 27). This Court is not being asked to issue a decision on the basis of a vague and shifting outline, but on a fixed and ready-to-film work of authorship. The "product presented to the court is the same product which will be produced if a declaration of noninfringement is obtained." *Sierra Applied Sciences, Inc.* at 1379.

In *Sobini Films*, the plaintiff had not "reached 'preliminary agreements' or obtained commitments from 'key talent' such as a director and lead actors." 61 U.S.P.Q.2d at 1934. EFL, in contrast, has obtained commitment from lead actors, a director, a cinematographer, a costume designer, an editor, a composer, and production designers, among others – in short, the "parties integral to the commencement of production of a major motion picture." *Id.* at 1935. There was no evidence that the plaintiff in *Sobini Films* had secured the "millions of investor dollars that feature-length motion pictures typically cost to produce, distribute and advertise." *Id.* EFL, in

contrast, has secured the millions of dollars in financing needed to meet its production budget. (DR ¶¶ 32-33, Exs. 6, 7).  In *Sobini Films*, the plaintiff had not "indicated the estimated time frame for completing the potentially infringing product." 61 U.S.P.Q.2d at 1936.  EFL, in contrast, has shown the Court that (assuming a timely ruling on infringement) it will complete filming of *Effie* in the summer and fall of 2011 and premiere the film at the Venice Film Festival in 2012.  (DR ¶ 5).

In short, everything that was vague or missing in *Sobini Films* is concrete and present here.  The infringement controversy here is real.  EFL is prepared to make the movie as scheduled if the legal uncertainty is resolved.  The screenplay of *Effie* is fixed and film-ready, which allows the Court to render a meaningful decision on infringement by comparing that screenplay to *The Countess*.  Finally, the Court's ruling will completely settle the controversy by determining whether the film of *Effie* can be distributed without fear of an infringement suit.

     (iii)    It Would Be Improvident for the Court to Deny a
                Declaratory Judgment as a Matter of Discretion

Murphy argues that even if EFL has shown that there is subject matter jurisdiction, the Court should still dismiss EFL's action as a matter of discretion. Def. Br. at 15-16.  This is a poisoned invitation, for Murphy is asking the Court to engage in an abuse of its discretion.

In *Starter,* the Second Circuit, having found subject matter jurisdiction, held that the district court, by declining to take declaratory judgment jurisdiction as a matter of discretion, abused that discretion.  *Starter* states that "a district court is *required* to entertain a declaratory judgment action (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." 84 F.3d at 597, quoting *Continental Cas. Co. v. Coastal Savings Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (emphasis added). *See also*

*Teva Pharmaceuticals USA, Inc. v. Eisai Co., Ltd.*, 620 F.3d 1341, 1349-50 (Fed. Cir. 2010) (reversing discretionary dismissal of declaratory judgment action as an abuse of discretion).[6]

As shown above, this Court has clear subject matter jurisdiction under the DJA, and a declaratory judgment on the question of infringement will terminate the controversy and afford relief from the uncertainty and insecurity created by Murphy's threats of infringement. The Court should therefore decline to dismiss the action on the basis of discretion. As in *Starter*, "this case is one where declaratory jurisdiction should be exercised." 84 F.3d at 597.

        (iv)    Foreign Intellectual Property Rights are Irrelevant

Murphy lastly argues that the Court cannot issue a conclusive judgment because it cannot decide whether *Effie* would infringe the intellectual property laws of countries other than the United States. Def. Br. at 16-17. The contention is absurd. If this were the law, the remedy of a declaratory judgment of non-intellectual property infringement would vanish overnight. *Crane v. Poetic Products, Ltd.*, 593 F. Supp. 2d 585 (S.D.N.Y. 2009), the one case cited by Murphy for his amazing proposition, holds exactly the opposite of what Murphy contends. The plaintiff there sought a declaratory judgment that his play on Pope John Paul I did not infringe the defendant's United States and United Kingdom copyrights in a book on the same subject. The court declined to grant a declaratory judgment as to U.K. law because of comity concerns. *Id.* at 598. But the same court also granted the plaintiff a declaratory judgment of non-infringement under U.S. law, finding that "no reasonable observer could find the two works substantially similar," and that the plaintiff's authorship and publication of his play "do not infringe any U.S. copyrights owned by Defendant." *Id.*

---

[6]       Both decisions postdate the case on which Murphy relies, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). It should also be noted that *Wilton* involved issues of conflict between federal and state courts over application of state law. The Supreme Court in *Wilton* expressly stated that it was not attempting to "delineate the outer boundaries of [courts'] discretion in other cases, for example, cases raising issues of federal law or where there are no parallel state proceedings." *Id.* at 290.

## II

## EFL HAS STATED A VALID CAUSE OF
## ACTION FOR DECLARATORY JUDGMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a Rule 12(b)(6) motion, a court must accept as true the facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor, and may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the lawsuit. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Murphy makes a perfunctory argument that EFL's Complaint does not meet the "plausibility" standard of *Twombly* and *Iqbal*. The Court may easily dispose of this argument. Those cases do not require a plaintiff to plead "detailed factual allegations"; the standard is aimed at the "unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1950. On Rule 12(b)(6) motions, the court must first assume "the veracity of well-pleaded factual allegations and *then* decide whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

The well-pleaded factual allegations of EFL's Complaint clears the *Twombly-Iqbal* plausibility bar with much room to spare. EFL has alleged that (1) Ms. Thompson has created the screenplay of *Effie (*Complaint ¶ 1), (2) that the screenplay has been registered in the United States Copyright Office (*id.*), (3) that EFL has acquired the rights to produce a motion major

motion picture based on *Effie* (¶ 2), (4) that Ms. Thompson did not have access to either the

screenplay or play version of *The Countess* in writing *Effie* (¶¶ 5, 30), and (5) that *Effie* is not

substantially similar to protectable elements in the play script of *The Countess* or, upon

information and belief, the screenplay of *The Countess* (¶ 31).[7]   EFL has thus given Murphy

factual notice that EFL is the exclusive assignee of the copyright in the *Effie* screenplay, and that

EFL is claiming that neither of the two factual elements required to prove infringement – access

and substantial similarity – are present here.

Likewise, the Complaint sufficiently alleges the facts of an actual controversy.  It states

that Murphy has alleged that Ms. Thompson had access to the play and screenplay version of *The*

*Countess* (¶ 34), that when Murphy read the *Effie* screenplay, he continued to assert that it

infringed his copyright, and that Ms. Thompson continued to deny these accusations (¶¶ 36-37).

It also alleges that the controversy is sufficiently real and immediate, as the complaint asserts

that resolution of the infringement issue will be necessary to close all financing for the film, and

to eliminate the risk that production or distribution of the film will be halted by Murphy's tactical

decision to hold off seeking an injunction until a crucial moment (¶¶ 40, 44).[8]

While the Complaint alleged that the movie of *Effie* would be "based" on the *Effie*

screenplay (¶ 6) (rather than saying, as is shown from the current declarations, that the

screenplay will be filmed), this did not somehow make the declaratory judgment claim

---

[7]       It is not implausible for the complaint to allege that *Effie* does not infringe the screenplay of *The Countess*, even if EFL had not seen the latter work. The Complaint alleges (¶ 30) that Ms. Thompson had no access to and did not copy from either version of *The Countess*; and lack of access alone defeats an infringement claim. Also, EFL could reasonably conclude from Murphy's weak summary of alleged similarities between *Effie* and his *The Countess* screenplay (ET, Ex. 8), that those common points do not meet the required standard of substantial similarity (Complaint ¶ 31).

[8]       As noted above, EFL has since secured the minimum financing needed to complete the film. However, a large portion of the financing can be withdrawn if pre-production does not start on August 1, 2011. Unless the rights in *Effie* are cleared by this Court prior to that date, the movie may not proceed to production.

implausible. *Cf.* Def. Br. at 6. Murphy ignores the principle that all reasonable inferences from a complaint's allegations must be drawn in favor of a plaintiff. From the Complaint's allegation that the film of *Effie* will be based on the screenplay created by Ms. Thompson, the indisputable fact that screenplays are scripts which contain the dialogue and action that will be filmed in a motion picture, and the fact that EFL is seeking a declaratory judgment so that the film can be made and distributed, the Court can draw the reasonable inferences that (1) the film of *Effie* will incorporate most, if not all, of the expression, characterization, and plot development of the screenplay, and (2) that the screenplay and film of *Effie* will also contain what Murphy asserts were infringing similarities in the draft he saw. EFL thus asserts a fully plausible claim for a declaratory judgment that the film of *Effie* is not infringing.

Murphy's position is, moreover, disingenuous. He clearly understood before the Complaint was filed that the question of whether *Effie* (film or screenplay) infringes copyright in *The Countess* (screenplay) would be determined by a comparison of the two screenplays. His own lawyer's December 4, 2010 letter (Complaint, Ex. 5) stated that "a substantial similarity comparison between 'Effie' and 'The Countess' can only be accomplished by a careful and meticulous review of both scripts." She also made it clear that Murphy's infringement claim would be directed to the film of *Effie*, specifically saying that EFL "ha[s] been able to find a way to proceed to finance this film and clear any chain of title objections of the financiers' attorneys without resolving our claim." She asserted her client's right to bring a suit against not merely the author of the screenplay, but also the producer of the film.[9] Because EFL's Complaint does state

---

[9]      Even if Murphy could have had uncertainty, it would now be dispelled by the Thompson and Rosenfeld Declarations. These state that the *Effie* screenplay is final, that the screenplay contains all the elements of the draft which Murphy read and claimed to be infringing, and that the screenplay will be filmed as written, without further changes. (DR ¶ 27; ET ¶ 40). If the Court believes it necessary, EFL will promptly amend its complaint to reflect these facts. However, that formal amendment should not justify any delay of Murphy's obligation to promptly file an answer after his motion is denied.

a plausible and valid claim for a declaratory judgment of non-infringement, the Court should deny Murphy's 12(b)(6) motion.

## CONCLUSION

For the reasons stated above, the Court should deny defendant Murphy's motion to dismiss in its entirety, and direct that Murphy file an answer to the Complaint within 14 days after the date of the Court's ruling.

Dated:  New York, New York
        March 16, 2011

DLA PIPER LLP (US)


By:   _/s/ Andrew L. Deutsch_
Andrew L. Deutsch
E. O'Brien Kelley

1251 Avenue of the Americas
New York, NY 10020
(212) 335-4880

_Attorneys for Plaintiff Effie Film, LLC_
